## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF ALASKA,<br>1031 W. 4th Avenue, Suite 200<br>Anchorage, AK 99501<br><br>      Plaintiff,<br><br>          v.<br><br>DIRK KEMPTHORNE, in his official capacity<br>as the Secretary of the United States<br>Department of the Interior, H. DALE HALL,<br>in his official capacity as the Director of the<br>United States Fish and Wildlife Service, and<br>UNITED STATES FISH AND WILDLIFE<br>SERVICE,<br>1849 C Street, N.W.<br>Washington, D.C. 20240<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.:<br><br>_____ |

---

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

---

### INTRODUCTION

1.     Plaintiff State of Alaska ("Alaska" or the "State") brings this action to challenge the listing by the United States Fish and Wildlife Service (the "Service") of the polar bear as "threatened" throughout its range under the Endangered Species Act ("ESA"). 16 U.S.C. §§ 1531–1544. *See Determination of Threatened Status for the Polar Bear Throughout its Range, Final Rule*, 73 Fed. Reg. 28212–28303 (May 15, 2008) (the "Final Rule").

2.     Alaska brings this action under (1) Section 11(g)(1)(C) of the ESA, 16 U.S.C. § 1540(g)(1)(C), to address the Defendants' failure to perform duties under ESA Section 4, 16

U.S.C. § 1533; (2) Section 115(a)(1) of the Marine Mammal Protection Act ("MMPA"), 16

U.S.C. § 1383b(a)(1), to address the Defendants' failure to perform duties thereunder; and (3) the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, to address Defendants' failure to

comply with legal requirements not otherwise actionable under the ESA or under the MMPA.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal

question jurisdiction), 16 U.S.C. § 1540(g) (Endangered Species Act citizen suit provision), and

5 U.S.C. §§ 702, 706 (Administrative Procedure Act).

4.      Alaska satisfied the written notice requirement of the Endangered Species Act

citizen suit provision.  16 U.S.C. § 1540(g)(2).  Over 60 days ago, by letter dated May 23, 2008,

Alaska gave written notice to the Service and the individually named Defendants of the

government's failure to perform certain duties under 16 U.S.C. § 1533.

5.      An actual, justiciable controversy now exists between Alaska and the Defendants,

and the requested relief is proper under 28 U.S.C. §§ 2201–2202, 5 U.S.C. §§ 701–706, and 16

U.S.C. § 1540(g).

6.      The federal government has waived sovereign immunity in this action pursuant to

5 U.S.C. § 702 and 16 U.S.C. § 1540(g).

7.      Alaska has exhausted all administrative remedies.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this action is

brought against officers of agencies in the United States in their official capacities and the

Service.  Further, actions and decisions challenged by this lawsuit were made in substantial part

in the District of Columbia.  Alaska maintains an office in this District.

## PARTIES

### Plaintiff

9.      Alaska is a sovereign state, which has an interest in the management,

conservation, and regulation of all wildlife and other natural resources within its jurisdiction,

including the polar bear and its habitat.  Alaska Const. Art. VIII, §§ 1, 2, 4; Alaska Stat. §

16.05.020.  Alaska participates in the direct management of its wildlife resources through its

Departments of Fish and Game, Natural Resources, and Environmental Conservation.  The

Alaska Comprehensive Wildlife Conservation Strategy, approved by the Service, contains

affirmative conservation measures, including international agreements and cooperation with

other government agencies through research, monitoring, and conservation practices designed to

protect and conserve the polar bear and avoid the need for the species to be listed under the ESA.

The Alaska Coastal Management Program (Alaska Stat. §§ 46.39, 46.40) includes statewide

standards found at Alaska Admin. Code tit. 11, § 112 which embody the State's policy direction

for natural resource development and conservation in the coastal zone, and which form the basis

for developing a project's consistency determination under that Program.  These standards

govern the uses and activities and resources and habitats that are part of a proposed project, and

include specific standards for habitat and subsistence, both of which are considered during

consistency reviews.

10.      Alaska is also responsible for the welfare of its citizens.  The Service's listing of

the polar bear as a threatened species will have a significant adverse impact on Alaska because

additional regulation of the species and its habitat under the ESA will deter activities such as

commercial fisheries, oil and gas exploration and development, transportation, and tourism

within and off-shore of Alaska.  Many Alaskans rely on these activities for employment, and the

State and its municipalities rely on tax and royalty revenues from these activities and related commerce to provide services for their citizens.

11.    Municipal governments (which are political subdivisions of the State of Alaska under Alaska Stat. §§ 29.04.010, 29.04.020) located on or near coastal areas within the range of the polar bear, will be adversely affected by the listing because the listing and resulting regulatory measures will interfere with the municipalities' efforts to provide public services to Alaska residents and impact their land use planning, platting, and regulatory activities.

12.    Alaska has standing to bring this action, and the challenged agency decisions are final and ripe for review by this Court.

## Defendants

13.    Defendant Dirk Kempthorne is the Secretary of the United States Department of the Interior ("DOI") and is being sued in his official capacity. The Secretary is responsible for the administration of the ESA and signed the Final Rule.

14.    Defendant H. Dale Hall is the Director of the United States Fish and Wildlife Service and is being sued in his official capacity. The Director is responsible for the administration and the implementation of the ESA.

15.    Defendant United States Fish and Wildlife Service is a federal agency within the DOI and is the agency within the DOI that has been delegated the responsibility for implementing the ESA. Polar bears are marine mammals within the jurisdiction of the DOI and the Service. Hereafter the Defendants shall be referred to collectively as the "Service."

## LEGAL BACKGROUND

### A.    Endangered Species Act

16.    Section 4(a) of the ESA requires the Secretary of the Interior to determine by regulation whether species of fish, wildlife, or plants are "threatened" or "endangered" under specified criteria, and if so, to list such species as threatened or endangered as appropriate. Section 4(a) also requires the Secretary to designate by regulation "critical habitat" for such listed species to the maximum extent prudent and determinable. 16 U.S.C. § 1533. Regulations concerning listing determinations and critical habitat designations must be promulgated in accordance with the requirements of Section 4(b) of the ESA.

17.    The Secretary's authority to determine "threatened" status for a species, 16 U.S.C. § 1533(a), does not "confer discretion to ignore the required procedures of decisionmaking." *Bennett v. Spear*, 520 U.S. 154, 172 (1997).  The duty to make a "threatened" determination must be based

> solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction or on the high seas.

16 U.S.C. § 1533(b)(1)(A).

18.    To list a species, the Secretary must find that one or more of the five statutory listing factors are present:  (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) over utilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence.  16 U.S.C. § 1533(a)(1).

5

19.    If the Secretary determines that designating a species as endangered or threatened is warranted, he must publish the determination in the Federal Register, along with the complete text of a proposed regulation to implement such a determination.  *See* 16 U.S.C. § 1533(b)(5).

20.    Under Section 4(d), when a species is listed as threatened, the Secretary shall issue "such regulations as he deems necessary and advisable to provide for the conservation of the species." 16 U.S.C. § 1533(d).

21.    Any publication in the Federal Register of a final regulation listing a species as threatened under the ESA must include a summary of the data upon which the regulation is based and must show the relationship of the data to the regulation.  *See* 16 U.S.C. § 1533(b)(8).

22.    Under Section 4(i) of the ESA, if "a State agency … files comments disagreeing with all or part of the proposed regulation, and the Secretary issues a final regulation which is in conflict with such comments … [the Secretary shall] submit to the State agency a written justification for [the] failure to adopt regulations consistent with the agency's comments or petition." 16 U.S.C. § 1533(i).

23.    Section 11(g) of the ESA provides that "any person may commence a civil suit on his own behalf … against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under [Section 4] which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C).

24.    Section 10(e) of the ESA provides for regulation by the Secretary of subsistence hunting of threatened and endangered species by Alaska Natives.  *See* 16 U.S.C. § 1539(e).

**B.    Marine Mammal Protection Act**

25.    The MMPA prohibits the take and importation of marine mammals, including the polar bear, 16 U.S.C. §§ 1362(6), 1371, and provides for protection of habitat and collection of

biological information.  The MMPA provides for the regulation of hunting, including subsistence hunting of marine mammals by Alaska Natives.  *See* 16 U.S.C. § 1371(b).

26.    The MMPA provides for certain prohibitions in regard to species or stocks that are "depleted."  For purposes of the MMPA, "the term 'depletion' or 'depleted' means any case in which –

> (A) the Secretary, after consultation with the Marine Mammal Commission and the Committee of Scientific Advisors on Marine Mammals established under subchapter III of this chapter, determines that a species or population stock is below its optimum sustainable population; (B) a State, to which authority for the conservation and management of a species or population stock is transferred under section 1379 of this title, determines that such species or stock is below its optimum sustainable population; or (C) a species or population stock is listed as an endangered species or a threatened species under the Endangered Species Act of 1973 [16 U.S.C. § 1531 et seq.].

16 U.S.C. § 1362(1).

27.    Section 115(a)(1) of the MMPA further requires that in "any action by the [Service] to determine if a species or stock should be designated as depleted," the Service "shall only make such a determination by issuance of a rule, after notice and opportunity for public comment and after a call for information," and such determination shall be based on "the best scientific information available."  16 U.S.C. § 1383b(a)(1).  A depleted stock determination must be based on "the best scientific information available."  16 U.S.C. § 1383b(a)(2).

28.    Section 115(a)(2) of the MMPA further requires that prior to making a depleted stock determination, the Secretary must publish in the Federal Register "a call to assist the Secretary in obtaining scientific information from individuals and organizations concerned with the conservation of marine mammals, from persons in any industry which might be affected by the determination, and from academic institutions.  In addition, the Secretary shall utilize, to the extent the Secretary determines to be feasible, informal working groups of interested parties, and other methods to gather the necessary information."  16 U.S.C. § 1383b(a)(2).

7

C.    **Administrative Procedure Act**

29.    The APA provides for judicial review of final agency action by persons "aggrieved" by such action.  5 U.S.C. § 702.  The APA also provides standards applicable when a federal agency proposes and adopts final rules and regulations.  5 U.S.C. §§ 553, 551(4).  Specifically, agencies must provide "general notice" of any "proposed rule making" to the public through publication in the Federal Register.  That notice must include "(1) a statement of the time, place, and nature of the public rule making proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved."  5 U.S.C. § 553(b).  Agencies proposing rules are required by 5 U.S.C. § 553(c) to respond to significant public comments on that rulemaking.

30.    Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  A reviewing court shall also "hold unlawful and set aside agency action, findings, and conclusions found to be … without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

## FACTUAL BACKGROUND

A.    **The Polar Bear**

31.    Polar bears (*Ursus maritimus*) are considered marine mammals and are found throughout the ice covered seas in the Northern hemisphere.  Polar bears are adapted to living on sea ice, and seasonally may spend significant time on land.

32.    Polar bears now number 20,000–25,000 worldwide (*see* 73 Fed. Reg. at 28215) as compared to 8,000–10,000 in 1965–1970.  The Chukchi Sea, Southern Beaufort Sea, and Northern Beaufort Sea subpopulations, the three subpopulations associated with Alaska and

United States Territory, and shared with Russia (Chukchi Sea) and Canada (Southern and Northern Beaufort Sea), are estimated at 4,700 polar bears collectively. *See* 73 Fed. Reg. at 28217. The Southern Beaufort Sea subpopulation, found along the North Slope of Alaska and ranging into western Canada, and the Chukchi Sea subpopulation, found from western Alaska to Wrangel Island and eastern Siberia are most closely associated with Alaska. The current world-wide population has not significantly declined in recent years. This overall stability is also reflected in the most recent publication of the International Union for Conservation of Nature and Natural Resources ("IUCN") Polar Bear Specialists Group which reports that some subpopulations have declined, others have increased, and some remain stable.

33.     Polar bears existed during and survived through prior Arctic warming periods including the Last Interglacial (115,000–140,000 years before present), and the Holocene Thermal Maximum (4,000–12,000 years before present). There was also a warming period during the Medieval Period (950–1300 A.D.).

34.     Polar bears are important for subsistence purposes to Alaska Natives and the subsistence harvest of polar bears is provided for in the ESA and MMPA. Other hunting has not been permitted in the United States since the enactment of the MMPA in 1972. The MMPA provides significant conservation measures to protect polar bears.

35.     The worldwide distribution of polar bears has been characterized as consisting of a number of different population groupings for management purposes. For example, the United States Geological Survey ("USGS") has identified four ecoregion populations, while the IUCN describes the bear as comprising nineteen subpopulations worldwide.

36.     The Final Rule recognizes nineteen subpopulations of polar bear for management and research purposes. *See* 73 Fed. Reg. at 28215.

37.     Neither the nineteen subpopulations of polar bears worldwide described by the

IUCN, nor the four ecoregion populations described by USGS, could reasonably be considered

to represent distinct population segments.  Because of ranging behavior, particularly of male

polar bears, and resulting gene flow, subpopulations are neither distinct nor significant.

Similarly, the ranging behavior of polar bears may prevent the loss of summer habitat from the

Southern extreme of its range from representing loss of a significant portion of the range of the

polar bear even if the modeling was accepted as a reasonable projection of likely future

conditions.

**B.     Listing Decision**

38.     In response to a petition to list the polar bear under the ESA submitted by the

Center for Biological Diversity, the Service published in the Federal Register on January 9,

2007, its 12-month petition finding that listing was warranted and its proposed to rule to list the

polar bear as threatened.  *See* 72 Fed. Reg. 1064-1099 (Jan. 9, 2007) ("Proposed Rule").  The

decision to propose listing the polar bear as threatened was based on the determination that "the

polar bear is threatened by habitat loss and inadequate regulatory mechanisms to address sea ice

recession."  *See* 72 Fed. Reg. at 1095.

39.     On April 9, 2007, Alaska provided comments in response to and in disagreement

with the Proposed Rule.  Alaska provided the Service with, among other relevant information,

scientific and commercial data supporting a determination that listing the polar bear was not

warranted under the two listing factors (A and D) being considered by the Service.  Alaska

provided the Service with (1) detailed data on sea ice predictions indicating that the Service's

analysis of the threatened destruction, modification, or curtailment of polar bear habitat reflected

a "worst case" scenario instead of being properly limited to a "likely" scenario; and (2) detailed

data on regulatory mechanisms, including conservation programs within Alaska and the international community, which have resulted in a sustainable worldwide polar bear population.

40.    The USGS published nine reports on September 7, 2007, and made them available for public comment.  The reports purported to demonstrate that the species may become threatened in the future and that its range may be reduced in the future at its southern boundaries.

41.    On October 22, 2007, in response to the USGS reports, Alaska through supplemental comments reaffirmed its disagreement with the technical basis for the Proposed Rule.

42.    On May 15, 2008, the Secretary published the Final Rule determining threatened status for the polar bear under the ESA, 73 Fed. Reg. 28212-28303, and also published separate regulations pursuant to Section 4(d) of the ESA.  73 Fed. Reg. 28306-28318 (May 15, 2008).

43.    In the Final Rule, the Service opined "[b]ased upon the best available scientific and commercial information, that polar bear habitat–principally sea ice–is declining throughout the species' range, that this decline is expected to continue for the foreseeable future [45 years], and that this loss threatens the species throughout all of its range." 73 Fed. Reg. at 28212.

44.    The Service made the determination to list the polar bear as threatened based on Factors A and D–the present or threatened destruction, modification, or curtailment of the polar bear's habitat or range and the inadequacy of existing regulatory mechanisms. *See* 73 Fed. Reg. at 28292-93.

45.    The Service found that under Factor A, the ongoing and projected loss of the polar bear's sea ice habitat threatened the species throughout its range.  According to the Service, productivity, abundance, and availability of ice seals–the polar bear's primary prey–would be diminished by the loss of sea ice, and polar bears would be required to expend more energy to

obtain food.  Also, access to traditional denning areas would be affected, which would result in a reduced population.  *See* 73 Fed. Reg. at 28292.

46.    Under Factor D, the Service determined that regulatory measures existed at the regional, national, and international level, these mechanisms are adequate to address actual and potential threats to polar bears from direct take, disturbance by humans, and incidental or harassment take.  *See* 73 Fed. Reg. at 28293.  However, the Service took a broad approach and found that the existing mechanisms were inadequate because they were not effective in "counteracting the worldwide growth of" greenhouse gases.  *Id.*

47.    Five weeks after the Final Rule, Alaska received, through the Office of the Governor, a letter dated June 23, 2008, from Director Hall purporting to respond to the comments Alaska submitted on April 9 and October 22, 2007, regarding the Proposed Rule and the USGS Polar Bear Reports.

## FIRST CLAIM FOR RELIEF
### (Violation of the ESA–Failure to Make Listing Based on Best Science)

48.    Alaska incorporates by reference each of the allegations in paragraphs 1 through 47.

49.    Section 4 (b)(1)(A) requires that the Service make its listing determinations based "solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species."  16 U.S.C. § 1533(b)(1)(A).

50.    The Service failed to make the listing polar bear determination based on "the best scientific and commercial data available."  Specifically, among other things, the Service failed to:

(a) consider the best scientific data available regarding whether the polar bear is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range;

(b) establish, based on the best scientific data available, the "foreseeable future" relevant to its listing determination, and instead relied on an arbitrary 45-year period as the "foreseeable future";

(c) consider the best scientific data available demonstrating that climate systems have a high level of natural variability and climate change models are unreliable beyond about a decade;

(d) consider the best scientific data available regarding the currently healthy status of the species, and instead assumed without reliable scientific data that the species as a whole is in decline or facing direct immediate threats;

(e) consider the best scientific data available to support computer modeling to accurately predict impacts to the polar bear from seasonal ice loss, and instead relied on unreasonable modeling assumptions, uncertain variables, and incomplete information to make predictions regarding seasonal ice loss and carrying capacity;

(f) consider the best scientific data available which projected overall declines in carrying capacity of only "10 to 22% from present levels by year 45, 22-32 % from present levels by year 75, and 20-37% from present levels by year 100," and which projected declines in optimal habitat loss at only 23-40% at 100 years, according to a 2007 USGS report; and

(g) consider the best scientific data available demonstrating the ability of polar bears to adapt and survive changing climate conditions as demonstrated by their survival through prior warming periods.

51.     The Service's failure to consider and make its listing determination based on the "best scientific data available" within the meaning of Section 4(b)(1)(A), 16 U.S.C. § 1533(b)(1)(A), entitles Alaska to the relief requested below.

## SECOND CLAIM FOR RELIEF
### (Violation of the ESA–Failure to Consider State Efforts)

52.     Alaska incorporates by reference each of the allegations in paragraphs 1 through 51.

53.     Section 4(b)(1)(A) requires that the Service make its listing determinations "after taking into account those efforts … being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species." 16 U.S.C. § 1533(b)(1)(A). Specifically, the Service failed to consider the substantial conservation efforts, programs, and regulatory mechanisms implemented by the State of Alaska, its political subdivisions, and within and among foreign nations and the United States which have contributed to increases in polar bear numbers world-wide to 20,000-25,000 from 8,000-10,000 in 1965-1970.

54.     The Service's failure to adequately consider substantial efforts being made by Alaska; foreign nations; and political subdivisions of Alaska and of foreign nations; to protect the polar bear violates Section 4(b)(1)(A), 16 U.S.C. § 1533(b)(1)(A), entitling Alaska to the relief requested below.

## THIRD CLAIM FOR RELIEF
### (Violation of the ESA–Failure to Summarize and Show Relationship of Data)

55.     Alaska incorporates by reference each of the allegations in paragraphs 1 through 54.

56.    Under Section 4(b)(8), the Service must summarize the data on which the regulation is based and show the relationship of such data to the final regulation. 16 U.S.C. § 1533(b)(8).

57.    The Service in the Final Rule failed to disclose, summarize, and show relationships of data to the final regulation with respect to modeling methodology and assumptions, and the results of such modeling relating to biological and seasonal ice loss models used to predict decrease in habitat and carrying capacity.

58.    The Service's failure to summarize the modeling methodology, assumptions, and data generated from modeling and to show the relationship of such data to the final regulation violates Section 4(b)(8), 6 U.S.C. § 1533(b)(8), entitling Alaska to the relief requested below.

### FOURTH CLAIM FOR RELIEF
**(Violation of ESA–Failure to Make Determination Based on Range)**

59.    Alaska incorporates by reference each of the allegations in paragraphs 1 through 58.

60.    Section 3(20) defines a "threatened species" as "any species which is likely to become an endangered species within the foreseeable future *throughout all or a significant portion of its range*." 16 U.S.C. § 1532(20) (emphasis added).

61.    In the Final Rule, the Service failed to consider whether the polar bear is likely to become an endangered species throughout all or a significant portion of its range given available information regarding the overall stability of "subpopulations" of polar bears worldwide and the ranging behavior, particularly of male polar bears, resulting in healthy gene flow.

62.    The Service's failure to adequately consider whether the polar bear is likely to become an endangered species throughout all or a significant portion of its range entitles Alaska to the relief requested below.

## FIFTH CLAIM FOR RELIEF
### (Violation of ESA——Failure to Provide Adequate Justification to State Agency for Adopting Regulations Inconsistent with State Agency's Recommendation)

63.    Alaska incorporates by reference each of the allegations in paragraphs 1 through 62.

64.    Section 4(i) requires the Secretary to submit written justification to the State if a State agency files comments disagreeing with a proposed regulation and the Secretary issues a final regulation in conflict with the comments.  16 U.S.C. § 1533(i).

65.    Both sets of comments filed by Alaska in response to the Proposed Rule and the USGS Polar Bear Reports disagreed with all or part of the proposed listing regulation to list the polar bear as threatened throughout its range.

66.    In this instance, Alaska received only a post hoc response from Defendant Hall *five* weeks after the Service's promulgation of the final listing rule, which purported to respond to Alaska's comments and criticisms of the Final Rule.

67.    Defendant Hall's post hoc response did not adequately provide the required "written justification for [the Service's] failure to adopt regulations consistent with the [Alaska state] agency's comments or petition." 16 U.S.C. § 1533(i).  For example, Defendant Hall's letter failed adequately to explain or justify the Service's determinations regarding polar bear adaptability during warming periods and in extensive ice-free conditions.  Nor did it adequately explain or justify the Service's conclusions regarding the impact of a maximum decrease of less than 25% in optimal habitat carrying capacity over 45 years on species survival, or address the adequacy of remaining habitat to support polar bear survival as a species.  These and other failures to respond to points raised in Alaska's comments concerning future habitat trends and

species survival impair Alaska's ability to respond to the polar bear listing and to identify and perform actions for the conservation of the polar bear.

68.    The Service's failure to justify its adoption of regulations inconsistent with the State's comments further harms Alaska's ability to regulate and manage its natural resources generally, including its lands, waters, fisheries, wildlife, and mineral reserves.

69.    The Service's failure to justify its adoption of regulations inconsistent with Alaska's comments to the Proposed Rule and the USGS Reports violates Section 4(i), 16 U.S.C. § 1533(i), entitling Alaska to the relief requested below.

**SIXTH CLAIM FOR RELIEF**
**(Violation of the APA and MMPA–**
**Failure to Provide Notice and Allow Public Comment of Depletion Determination)**

70.    Alaska incorporates by reference each of the allegations in paragraphs 1 through 69.

71.    The MMPA requires that in "any action by the [Service] to determine if a species or stock should be designated as depleted," the Service "shall only make such a determination by issuance of a rule, after notice and opportunity for public comment and after a call for information;" and such determination shall be based on "the best scientific information available." 16 U.S.C. § 1383b(a).

72.    The APA also requires "general notice" of any "proposed rule making" to be published in the Federal Register, an opportunity for public comment, and an agency response to public comments. 5 U.S.C. § 553(b),(c).

73.    To the extent the Final Rule is deemed to be a "designation" of the polar bear as a "depleted species" within the meaning of the MMPA, the Service failed to give the public adequate notice and an opportunity to comment on this aspect of the Final Rule. The public

notice on the Proposed Rule did not sufficiently identify the depleted species designation as an issue, and thus failed to solicit full and meaningful public comment. Nor did the Service make a "call for information," as that term is used in 16 U.S.C. § 1383b(a)(2), or otherwise employ the procedures outlined in that Section as applicable to depleted species designations.

74.    The Service did not ask for comments on, and the rulemaking did not consider, whether the polar bear is "below its optimum sustainable population," as required for the designation of a species as "depleted." 16 U.S.C. § 1362(1).

75.    The Service's failure to provide public notice and an opportunity to submit public comment, and to respond to public comment on the Service's depletion determination violates the MMPA, 16 U.S.C. § 1383b(a), and the APA, 5 U.S.C. § 553(b),(c), entitling Alaska to the relief requested below.

### SEVENTH CLAIM FOR RELIEF
#### (Violation of the APA–
#### Failure to Respond to Significant Comments)

76.    Alaska incorporates by reference each of the allegations in paragraphs 1 through 75.

77.    The APA requires an opportunity for public comment, and an agency response to significant public comments. 5 U.S.C. § 553(b),(c).

78.    Alaska submitted, and the Secretary failed to adequately consider, incorporate, or respond to, detailed scientific and commercial information indicating that listing the polar bear was unwarranted.

79.    The Secretary also failed to consider and adequately respond to the information submitted to it documenting that Alaska and foreign nations have made significant efforts to

protect polar bear habitat and to reduce any potential effects from climate change to the bear and its habitat.

80.    The Service's failure to respond to significant comments submitted by Alaska violates the APA, 5 U.S.C. § 553(b),(c), entitling Alaska to the relief requested below.

### EIGHTH CLAIM FOR RELIEF
(Violation of the APA–
**Arbitrary and Capricious, Abuse of Discretion, Not in Accordance with Law)**

81.    Alaska incorporates by reference each of the allegations in paragraphs 1 through 80.

82.    The Service's conduct in issuing the Final Rule, as described in preceding Claims for Relief was arbitrary and capricious, constituted an abuse of discretion, and was otherwise not in accordance with law.

83.    Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and to set aside an agency decision "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Alaska is therefore entitled to the relief requested below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment providing the following relief:

1.     Declare that Defendants violated the ESA, MMPA, and the APA;

2.     Declare that Defendants' actions, as set forth above, are arbitrary and capricious, an abuse of discretion, and not in accordance with law;

3.     Vacate and set aside the Final Rule of May 15, 2008;

4.     Enjoin Defendants from relying on or enforcing the threatened status determination under the ESA for the polar bear;

5.     Enjoin Defendants from relying on or enforcing the depleted status determination under the MMPA for the polar bear;

6.     Award Alaska its attorneys' fees and costs incurred in bringing and maintaining this action pursuant to Section 11(g) of the ESA, 28 U.S.C. § 2412, and the Equal Access to Justice Act, 28 U.S.C. § 2412, and other applicable authorities; and

7.     Grant Plaintiff such other and further relief as the Court may deem necessary and appropriate.

Respectfully submitted this ___4TH___ day of August, 2008.

HOLLAND & HART LLP

By: _____

Craig D. Galli (D.C. Bar No. 414395)
Holland & Hart LLP
60 E. South Temple, Suite 2000
Salt Lake City, UT 84111-1031
Telephone: (801) 799-5800
Facsimile: (801) 364-9124
Email: cgalli@hollandhart.com

William G. Myers III (D.C. Bar No. 408573)
Holland & Hart LLP
101 S. Capitol Boulevard, Suite 1400
Boise, Idaho 83702-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
Email: wmyers@hollandhart.com

TALIS J. COLBERG
ATTORNEY GENERAL

By: _____

Bradley E. Meyen (Alaska Bar No. 8506067)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: 907-269-5100
Facsimile: 907-279-2834
Email: brad.meyen@alaska.gov

Attorneys for Plaintiff State of Alaska

3893017_5.DOC

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

State of Alaska

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

William G. Myers III, Holland & Hart LLP 101 S Capitol Blvd Ste 1400 Boise, ID 83702
(208) 342-5000; Craig D. Galli, Holland & Hart LLP, 60 E South Temple, Ste 2000, Salt
Lake City, UT 84111, (801) 799-5800; Talis J. Colberg, State of Alaska Attorney General,
Bradley E. Meyen, Asst Attorney General , Department of Law, 1031 W 4th Ave, Ste 200,
Anchorage, AK 99501 (907) 269-5100

**DEFENDANTS**

DIRK KEMPTHORNE, in his official capacity as the Secretary of the United States Department of the Interior, H. DALE HALL, in his official capacity as the Director of the United States Fish and Wildlife Service, and UNITED STATES FISH AND WILDLIFE SERVICE,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

Case: 1:08-cv-01352
Assigned To : Sullivan, Emmet G.
Assign. Date : 8/4/2008
Description: Admn. Agency Review

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government Plaintiff
O  3 Federal Question (U.S. Government Not a Party)
⊙  2 U.S. Government Defendant
O  4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

O **A. Antitrust**

☐ 410 Antitrust

O **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

⊙ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

O **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

O **E. General Civil (Other)**  OR  **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| 530 Habeas Corpus-General<br>510 Motion/Vacate Sentence | 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | 895 Freedom of Information Act<br>890 Other Statutory Actions (if Privacy Act)<br><br>*(If Privacy Act) *(If pro se, select this deck)* | 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting & Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights<br>445 American w/Disabilities-Employment<br>446 Americans w/Disabilities-Other | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability<br>196 Franchise | 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊗ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
5 U.S.C. 702 Violation of APA regarding Agency rule listing polar bears as threatened.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE 8/4/08   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed _only_ if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the _primary_ cause of action found in your complaint. You may select only _one_ category. You _must_ also select _one_ corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.